IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GERTHA D. WHITE,

    Plaintiff,

vs.

Case No. C2-07-216
Judge Edmund A. Sargus, Jr.
Magistrate Judge Terence P. Kemp

HONDA OF AMERICA MFG, INC.,

    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration the Motion for Summary Judgment filed by Defendant, Honda of America Manufacturing, Inc. ("Honda"). Honda maintains that the undisputed facts establish that it is entitled to judgment as a matter of law on all of Plaintiff Gertha D. White's claims. For the reasons that follow, Honda's Motion is GRANTED.

### I.

**A.    Facts**

Plaintiff, Gertha D. White, is an African American female. She began working for Honda in March of 1989 as a production associate at its Anna Engine Plant in Shelby County, Ohio. From 1989 to 1995, Plaintiff worked in the Suspension Assembly department building parts for Honda Accords and Civics. From 1995 to 2001, she worked in Ferrous Casting producing parts from molten metals and from 2001 to 2005, in Ferrous Machining, a procedure that finishes parts produced by the casting process. (Martin Aff. ¶ 6.)

Honda's employee disciplinary policy is divided into four categories that increase in severity: coaching, coordinator counseling, associate-relations counseling and manager-level counseling. (Martin Aff., ¶ 7.) While in the Suspension Assembly department from 1989 to 1995, Plaintiff was disciplined several times for failing to properly perform quality control measures. Plaintiff also received a one-day suspension for using abusive language and was disciplined for poor attendance three times. (Martin Aff., ¶¶8-14.)

In 1997, while in Ferrous Casting, Plaintiff received the highest level of counseling for leaving a forklift in gear after she exited it. The forklift traveled through the plant until it hit a safety post. She also received discipline while in Ferrous Casting for taking extended breaks; neglecting to wear proper safety equipment; throwing parts inside the plant in violation of safety rules; bringing her daughter into the plant without prior permission; reporting late to meetings; and excessive absenteeism. (*Id.*)

In 2001, Plaintiff transferred departments to Ferrous Machining. There, she received discipline in for violating work policies; tardiness to pre-shift meetings; quality control issues; and absenteeism. In 2004, Honda suspended Plaintiff for three days for throwing parts and creating a hostile working environment for her co-workers. (*Id.*)

On November 30, 2005, Plaintiff failed to perform quality-control check on engine cylinder sleeves, resulting in 1200 parts being produced without a quality check. A Production Staff associate who relieved Plaintiff on the machine noted the missed quality check on the Quality Control Check Sheet. (Martin Aff. ¶ 22.) When Plaintiff returned from break and saw this notation, she confronted her team leader who later reported that Plaintiff said in a hostile tone that she was "trying real hard not to lose her temper." (Pl. Dep. of 07/16/08, at 69-70.) After

investigating this incident, Honda terminated Plaintiff for accumulated gross misconduct. (Martin Aff. ¶ 24.)

Altogether, Honda disciplined Plaintiff more than forty-one times for tardiness, attendance, work quality, safety violations, and disrespect for her coworkers and managers. Plaintiff acknowledges that Honda coached or counseled her forty-one times, but asserts the reasons for this discipline were pretextual, and that its real motivation was race-based discrimination.

Plaintiff asserts that the employees at the Honda's Anna Plant are a diverse group of individuals, the majority of whom are Caucasian. (Pl's Aff., ¶ 3.) Plaintiff indicates that many of the Caucasian employees told her that "they had never been in direct, close contact with an African-American," and that their "impressions of the African-American race was comprised of what they had seen on television or the news." (Pl's Aff., ¶ 4.) She asserts that she therefore "felt it necessary to present [herself] in such a fashion that would make these individuals realize that the images they carried of African-Americans were just stereotypes. (Pl's Aff., ¶ 5.) During her tenure of employment, Plaintiff alleges that she "faced racism and discrimination regularly." (Pl's Aff., ¶ 6.) She asserts that on one occasion, while at work, she attempted to assist a Caucasian co-worker with a project, and he said "Did I ask your dumb black ass for any help?" (Pl's Aff., ¶ 12.) Plaintiff avers that another Caucasian employee once told her that an African-American male employee would not get a promotion because he was "black and arrogant and he's outnumbered." (Pl's Aff., ¶ 14.) Plaintiff also contends that a group of Caucasian employees asked her why "black people eat chitterlings and what are they . . . and if Erica White was

-3-

biracial."[1]  (Pl's Aff. ¶ 17.)[2]

## B. Procedural History

After she was terminated in December of 2005, Plaintiff, proceeding *pro se*, filed an employment discrimination lawsuit against Honda in the United States District Court for the Northern District of Ohio. In her Complaint, Plaintiff alleges race discrimination under Section 1981, Title VII and Ohio Revised Code Chapter 4112. Plaintiff further asserts claims intentional infliction of emotional distress, breach of implied contract and racial and sexual harassment.[3] The district court in the Northern District granted Honda's motion to transfer venue to this District. Plaintiff obtained an attorney, who made an appearance six months later.

Plaintiff served written requests for production of documents on Honda, to which Honda responded with nearly 2000 documents. Plaintiff, however, conducted no depositions. Honda filed its motion for summary judgment, to which Plaintiff responded in opposition, primarily with discovery information obtained against Honda in a different case involving another plaintiff. With

---

[1] Plaintiff's affidavit is not specific as to the identity of the speakers, or the date or even year in which these statements were allegedly made during her sixteen year tenure at Honda. There is no indication that the persons making such statements were supervisors.

[2] Plaintiff makes statements in Paragraphs 9 and 18 her Affidavit related to alleged age discrimination while at Honda. Plaintiff's Complaint, however, makes no mention of age-based discrimination. Moreover, Plaintiff's affidavit statements in this regard are inconsistent with her sworn deposition testimony that she is not asserting a claim of age discrimination against Honda. (Pl's Dep., 7/16/08, at 6-7.) The Court, therefore, disregards these portions of Plaintiff's Affidavit. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997)(holding party may not create genuine issue of material fact by affidavit, after motion for summary judgment filed, that contradicts earlier deposition testimony).

[3] Although Plaintiff's Complaint refers once to Title VII's prohibition against religious discrimination, she concedes that she is not making any claims for religious discrimination. (Pl. Dep. of 6/26/2008, at 102.) Moreover, her EEOC complaint, which she exhausted before filing the instant lawsuit, makes no mention of religious discrimination. (Compl, Exh. A.)

-4-

her memorandum in opposition, Plaintiff also moved under Federal Rule of Civil Procedure 56(f) requesting additional discovery. The Court denied Plaintiff's motion, finding that Plaintiff had not demonstrated with any specificity a need for discovery and failed to set out what material facts she hoped to uncover, as required under Rule 56(f).. (Doc. 34) The Court permitted Plaintiff to supplement her memorandum in opposition. Plaintiff thereafter submitted an affidavit.

## II.

The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we view all facts and any inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617 (6th Cir.2001).

> At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried forward this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2).

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009). A scintilla of evidence in support of the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

## III.

### A.  Failure of Evidence

Here, Honda, as the moving party seeks summary judgment on all of the claims in Plaintiff's Complaint. Honda has met its initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S., at 325. Plaintiff, then, was obligated to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). Plaintiff has failed to do so.

#### 1.  *Conciliation Agreement*

Instead of adducing evidence refuting Honda's Motion for Summary Judgment, Plaintiff points to a twenty-year old Conciliation Agreement between Honda and the United States Equal Employment Opportunity Commission ("EEOC") as proof that Honda has a long history of discrimination. Plaintiff cites to an unauthenticated newspaper Article in *The New York Times* from March 24, 1988. Plaintiff claims that the Conciliation Agreement is relevant because it demonstrates Honda has not "mended its ways." (Pl's Mem. in Opp., Doc. 26, at p.4-5.) The Court finds the 1988 Conciliation Agreement neither relevant to this case, nor admissible, as a matter of law.

All evidence regarding the parties' efforts to negotiate a settlement and the final Conciliation Agreement itself are inadmissible by operation of Title VII and the Federal Rule of Evidence 408. Title VII, Section 706(b) expressly prohibits introduction into evidence of conciliation, without the party's consent. Section 706(b) requires the EEOC to use "informal methods of conference, conciliation, and persuasion" to resolve claims. Further, "[n]othing said or done during and as part of such informal endeavor may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b). This statutory exclusion is grounded in the theory that any conciliation agreement contains unproven charges which are not admissible as evidence. The purpose of the exclusion was "to promote the congressional policy favoring unlitigated resolution of employment discrimination claims." *Branch v. Petroleum Co.*, 638 F. 2d 873, 879 (5th Cir. 1981). The prohibition is absolute because any disclosure "would discourage negotiated settlement and frustrate the intention of Congress." *Id.* at 879.

In *Bacon v. Honda of America Mfg., Inc.*, Case No. C2-99-803, Slip Op. at 60 (S.D.Ohio April 30, 2001)(Graham, J.), this Court analyzed the admissibility of the precise Conciliation Agreement at issue here and found that the document could not be used as evidence. The Court held that the 1988 Conciliation Agreement could not constitute evidence of discrimination in the plaintiff's claims ten years later for several reasons:

> Even assuming that the 1988 conciliation agreement does not fall within the scope of §2000e-5(b), it does not qualify as evidence relevant to the plaintiffs' disparate treatment claims. The agreement does not prove that Honda engaged in discrimination prior to 1988, but even if it did, both [plaintiffs] commenced their employment with Honda in 1988 after the conciliation agreement was signed. The fact that Honda entered into an agreement in 1988 which was designed to address allegations of past discrimination does not establish that Honda violated the

-7-

agreement or engaged in discriminatory practices after the plaintiffs were hired. The 1988 conciliation agreement does not constitute evidence supporting the plaintiffs' disparate treatment claims.

*Id.*

The 1988 Conciliation Agreement cannot be used as evidence that Honda discriminated against Plaintiff. The Court, therefore, does not take it into consideration in deciding Honda's Motion for Summary Judgment.

2.    *Deposition Testimony from a Witness in Another Case Against Honda*

Plaintiff relies upon the deposition testimony of a plaintiff, Monica Ways, in *EEOC v. Honda of America Mfg., Inc.*, Case No. C2-06-233 (S.D. Ohio)(Watson J.), as evidence that Honda discriminated against her. Ms. Ways was formerly employed by Honda at its Anna, Ohio facility. She intervened in the case that the EEOC brought against Honda for allegedly retailing against her for opposing discrimination. This evidence, however, is not proper under Rule 56(c) nor sufficient to overcome Honda's Motion for Summary Judgment.

According to Plaintiff's Memorandum in Opposition, she and Monica Ways and she were employed at the same facility between February 3, 2003 and April 19, 2004. Monica Ways, however, has no personal knowledge as to Honda's treatment of this Plaintiff. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Ms. Ways did not testify regarding Plaintiff in this case during her deposition. Plaintiff has not even suggested that she is familiar with Ms. Ways or that Ms. Ways knows anything about her or her lawsuit against Honda.[4]

---

[4]    To be sure, the Court recognizes that circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace may serve as circumstantial evidence of individualized discrimination directed against an individual plaintiff. *Ercegovich v. Goodyear Tire &*

-8-

Plaintiff also relies on Ms. Ways' testimony to support her assertion that, "[i]f a company will discriminate against a senior manager tasked with improving diversity and equal employment opportunity in the company, it will surely discriminate against a line worker such as Plaintiff . . . ." (Pl's Counter Mot. at 10.). The Court notes that there has been no finding that Honda discriminated against Ms. Ways, as that matter was also settled without Honda admitting liability.

Plaintiff also attempts to demonstrate through Ms. Ways' testimony her theory that "black women at [Honda] tended to get written up for 'disrespectful' behavior . . . " Ms. Ways concluded that a charge of "disrespect" was a label Honda used with black American women. *Id.* at 11-12.) This proposition, supported through Ms. Ways' testimony in another case, does not demonstrate that a genuine issue of material fact exists as to whether Honda discriminated against this Plaintiff. Plaintiff notes that, when she was disciplined on July 20, 2004 after she threw parts and created a hostile environment, the investigators noted in the incident report that she had exhibited a "bad attitude." Plaintiff has failed to show, in the first instance, that mentioning a poor attitude in a report equates with Honda labeling her as disrespectful, or that race had anything to do with Honda's decision to discipline Plaintiff for that incident.

---

*Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998)(internal quotation marks and citations omitted). Furthermore, "evidence of a . . . discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." *Id.* (internal quotation marks omitted). In evaluating such statements, "courts must carefully evaluate factors affecting the statement's probative value, such as the declarant's position in the [employer's] hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Id.* at 357 (internal quotation marks and citation omitted). In this case, however, Plaintiff has not pointed to anything in the testimony of Ms. Mays as evidence that managers in her former departments made off-handed comments or otherwise created a discriminatory atmosphere. Moreover, Ms. Mays was not called as a witness in this case, and without personal knowledge of the circumstances at issue, her deposition testimony is too attenuated to provide evidence that Honda discriminated against this Plaintiff.

3.  *Affidavit*

When the Court granted Plaintiff the opportunity to supplement her response to Honda's Motion for Summary Judgment, Plaintiff filed a her affidavit. Plaintiff did not, however, provide any additional briefing or otherwise indicate how her affidavit would prevent the entry of summary judgment in light of Honda's properly supported Motion. Indeed, many of Plaintiff's sworn affidavit statements relate events about other Honda employees and have no racial component whatsoever. Even as to those paragraphs that reflect matters related to race, Plaintiff has done no more than to state conclusory allegations without any context to the claims she raises in her Complaint.

4.  *Conclusion*

In this case, the question is whether Plaintiff, who bears the burden of proof, has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Plaintiff was obligated to present evidence on which the trier of fact could reasonably find for the her. *Liberty Lobby, Inc.*, 477 U.S. at 252. Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Beyond her affidavit, presented to the Court without the benefit of interpretive briefing, which contains scant few recollections of undated incidents involving unnamed individuals, Plaintiff has failed to adduce any significantly probative evidence showing a disputed material fact. On this basis alone, the Court could find Honda is entitled to summary judgment.

**B.     Merits**

Plaintiff asserts that her termination was due to her race in violation of Title VII and Ohio Revised Code Chapter 4112.[5] Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Title VII claims are subject to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as subsequently interpreted in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). "'On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)). Under this framework, "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination." *Id.* If the plaintiff comes forward with evidence, "[t]he defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action." *Id.* Finally, if the defendant meets this burden, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

---

[5] The Court analyzes Plaintiff's claims under Ohio Revised Code Chapter 4112 as under Title VII's framework. *See Noble v. Brinker Int'l., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)(noting analysis of state discrimination claims under Ohio Rev. Code § 4112.02 et seq. follows Title VII framework.)

-11-

discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253) (alteration in original).

    1.    **Wrongful Termination on the Basis of Race**

        a.    *Direct Evidence*

For the reasons already expressed, the Court find that Plaintiff has presented no admissible direct evidence of racial discrimination.

        b.    Prima Facie *Case*

To establish a *prima facie* case of wrongful termination, Plaintiff must show (1) that she is a member of a protected group, (2) that she was subject, in part, to an adverse employment decision, and (3) that she was replaced by a person outside the protected class or that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

Plaintiff was not replaced by another associate after her termination. (Martin Aff. ¶ 16.) Furthermore, Plaintiff has not come forward with any evidence, beyond citation to the allegations of her Complaint, to suggest that a similarly situated non-minority employee was treated more favorably than she. Plaintiff thus cannot establish a *prima facie* case. *See Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1116 (6th Cir. 2001) (affirming summary judgment for employer and noting that plaintiff produced no evidence that other employees "were similarly situated with respect to the severity and frequency of their performance errors" or "continued to commit errors even after being counseled to improve, as he was, by supervisors and through performance reviews"). This failure alone entitles Honda to summary judgment.

c.  *Legitimate, Non-Discriminatory Reasons for Plaintiff's Termination*

Honda asserts that it terminated Plaintiff for accumulated gross misconduct. This is sufficient to fulfill its obligation to identify a legitimate, non-discriminatory reason for the adverse employment action. *Majewski*, 274 F.3d at 1116 ("increasingly poor job performance" is legitimate, nondiscriminatory reason for employee's discharge).

d.  *Pretext*

Plaintiff has presented no evidence raising a genuine issue of material fact whether Honda's proffered explanation for her termination was merely pretextual. "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). "However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003)(en banc)). A trier of fact "not reject an employer's [nondiscriminatory] explanation . . . unless there is a sufficient basis in the evidence for doing so.'" *Upshaw v. Ford Motor Co.*, 576 F.3d. 576, 586 (6th Cir. 2009) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), abrogated in part on other grounds, *Gross v. FBL Fin. Servs., Inc.*, — U.S. — , 129 S. Ct. 2343, 2351-52 (2009)). "To allow the jury simply to refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit." *Manzer*, 29 F.3d at 1083 (citing *Burdine*, 450 U.S. at 254).

-13-

In opposing a properly supported motion for summary judgment, the plaintiff bears the burden of demonstrating pretext. Plaintiff here has failed to do so. Honda's Motion for Summary Judgment on Plaintiff's claims that her termination resulted from illegal race-based discrimination in violation of Title VII and Ohio Revised Code Chapter 4112 is, therefore, **GRANTED**.

### 2. Other Alleged Incidences of Race Discrimination

Honda points out that Plaintiff testified in her deposition regarding three incidents with respect to her working conditions that she believed were adverse employment actions that were motivated by race discrimination. Honda contends that the incidents Plaintiff describes are not adverse employment actions, but instead are minor differences in work assignments, without salary or work-hour changes. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir.1996)(holding adverse employment action typically must constitute "a materially adverse change in the terms of ... employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.") Further, Honda asserts that Plaintiff has not demonstrated that she was treated differently than non-minority employees. Plaintiff has not refuted these contentions. For this reason, and for those set forth above with respect to her termination claims, Honda's Motion for Summary Judgment is therefore **GRANTED** as to these other incidents of alleged discrimination.

### 3. Retaliatory Discharge

Plaintiff also alleges that her termination was in retaliation for her complaining about her supervisor's "unprofessionalism" during a coaching session. (Pl. Dep. of 06/26/2008, at 104.)

In order to establish a *prima facie* case of Title VII retaliation, Plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Russell v. Univ. of Toledo*, No. 07-3998, 2008 WL 3288345, at *9 (6th Cir. Aug. 12, 2008) (citation omitted). Section 1981 and the Ohio analogue to Title VII follow the same analysis. *See Clark v. Lockheed Martin Energy Sys., Inc.*, No. 07-5999, 2008 WL 2872178, at *1 (6th Cir. July 25, 2008) ("retaliation claims under § 1981 are governed by the same burden-shifting framework as . . . claims under Title VII").

First, Plaintiff has failed to show how her complaints that her supervisor acted less than professionally was protected activity under Title VII. Furthermore, there is no evidence that Honda terminated Plaintiff as a result of her complaints. Honda is entitled to judgment on Plaintiff's claim that her termination was retaliatory.

### 4. Non-Termination Retaliation Claims

Honda, not Plaintiff, has cited Plaintiff's deposition testimony which it supposes that Plaintiff would use to support her claims that she was retaliated against. According to Plaintiff's testimony, on two occasions, co-workers were told to stop talking to her; in 1989, Administration concluded that Plaintiff did not suffer same-sex harassment; and she received what she perceives to be "additional" work assignments after she complained of her Coordinator's unprofessional attitude in a coaching session. Again, Plaintiff has failed to refute Honda's Motion in this regard.

Indeed, the Supreme Court has explained that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and coworkers are not actionable . . . ." *Id.* (citation and internal punctuation omitted) (emphasis added). Instead, an act is "materially adverse" retaliation only if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal citation omitted). The complaints which Plaintiff lodges as suggestive of retaliation are not materially adverse. For these, and the reasons cited above, Honda's Motion is **GRANTED** with regard to Plaintiff's retaliation claims.

5. **Sexual Harassment**

Plaintiff testified in her deposition regarding four purported incidents of sexual harassment. Plaintiff did not claim sexual harassment in her Complaint, and Honda has no record of Plaintiff complaining of sexual harassment in its records. (Martin Aff., ¶ 17.) Moreover, Plaintiff has not repudiated Honda's Motion in this regard. Thus, to the extent Plaintiff intended to assert a sexual harassment claim, Honda is entitled to, and is therefore **GRANTED,** summary judgment on this claim.

6. **Racial Harassment**

Plaintiff claims racial harassment because, as she testified in her deposition, in her sixteen years at Honda, co-workers made fourteen derogatory racial comments to her or in her presence. Honda asserts that Plaintiff's allegations about racially derogatory statements fail because eleven of the fourteen alleged comments are barred by the statute of limitations. Honda also asserts that

-16-

the comments that survive the statute of limitations were neither severe nor pervasive enough to create an objectively hostile or abusive workplace. *See, e.g., Lovelace v. BP Prod. N. Am., Inc.*, 252 Fed. Appx. 33, 41 (6th Cir. 2007)(collecting prior Sixth Circuit cases concluding that conduct was not severe or pervasive including a case holding that five incidents of alleged harassment were not pervasive and a case holding that two racial slurs and a racist cartoon were not severe or pervasive).

Plaintiff does not challenge Honda's contentions that her claims are barred by the statute of limitations. Nor does she provide proof or argument that the alleged comments of which she complains reach the level of severity required to create an objectively hostile, offensive or intimidating work environment. Summary judgment in Honda's favor is therefore **GRANTED** as to all of Plaintiff's racial harassment claims.[6]

---

[6] The first incident that survives the statute of limitations occurred, according to Plaintiff's testimony, in June, 2002 or 2003. Plaintiff claims that "Teresa" in Administration asked Plaintiff about the logo "Free at Last" on Plaintiff's tee shirt. Plaintiff said that it referred to a celebration of the Emancipation Proclamation. Plaintiff testified that Teresa responded that she didn't want to hear about that "slavery stuff" and that Plaintiff was "free already" and "she didn't understand why I was wearing the shirt." Plaintiff testified that Teresa's use of the word "slavery" and that her statement, "I don't want to hear all that slavery stuff," was "directed to . . . [her] and . . . [her] ancestors." Plaintiff did not complain about the incident to anyone in authority over Teresa. (Pl. Dep. of 6/26/2008, at 238.)

Plaintiff's second complaint within the statute of limitations involved a confrontation with a co-worker that occurred one or two years later. Plaintiff claims that co-worker named "Misty" told Plaintiff to use "black magic" to restart a machine and referred to her as a "black bitch." Plaintiff complained about Misty's comments to Administration when her own conduct for abusing parts and creating a hostile work environment was investigated. (Pl. Dep. of 6/26/2008, at 296.)

Her third complaint involves an incident that occurred some time while she worked in Ferrous Casting from 1995 until 2001. Plaintiff claims that an associate from third shift named "Chris" screamed at Plaintiff about her leaving grease in a machine and said to her "you know most black people have AIDS." (Pl. Dep. of 7/18/2008, at 63.) She did not report this incident to Administration.

7. **Implied Contract Claim Including Breach of Contract and Intentional Infliction of Emotional Distress**

Plaintiff has adduced no evidence in support of her claims of breach of implied contract and intentional infliction of emotional distress. Plaintiff conceded in her deposition that she had no contract with Honda. Moreover, Plaintiff has failed to establish Honda's conduct raises to the threshold of intentional infliction of emotional distress. Plaintiff has come forward with no evidence to demonstrate that Honda "by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress" to her. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 374, 453, 453 N.E.2d 666, 671 (Ohio 1983). Further, Plaintiff has failed to provide evidence in her affidavit that she has suffered any serious emotional distress resulting from Honda's conduct, which is a necessary part of her claim. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759 (Ohio 1983).

Honda's Motion for Summary Judgment on these claims, therefore, is **GRANTED**.

**IV.**

For the foregoing reasons, Honda's Motion for Summary Judgment (Doc. #22) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

9-29-2009
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**